ARKANSAS STATE HIGHWAY COMM'N *v.*
H. B. HAMMOND ET AL

5-5047                                        447 S. W. 2d 664

Opinion delivered November 24, 1969

*Thomas B. Keys* and *George O. Green,* for appellant.

*Mobley, Bullock & Harris* and *George J. Cambiano,* for appellees.

GEORGE ROSE SMITH, Justice. In this condemnation case the Highway Commission is taking, for Interstate 40, 12.02 acres of a 102-acre tract belonging to the appellees. The jury fixed the landowners' compensation at $60,000. For reversal the Commission contends that the

trial court should have stricken the value testimony of the landowner Hammond and that of his supporting witness Tatum. We agree.

Hammond bought about 142 acres in 1963 for $25,-000. Before the trial he had sold 40 acres for $10,000, leaving him with an investment of $15,000. He testified, however, that the value of the remaining 102 acres was $132,400 before the taking and $52,250 after the taking, making a difference of $80,150. His witness Tatum gave substantially the same figures. In fact, the testimony of the two men was so nearly identical as to values that it is quite evident that they reached their conclusions jointly.

Hammond, in putting a value of $132,400 upon land for which he had paid $15,000 about four years earlier, regarded the land as peculiarly suitable for the creation of minnow ponds by the construction of levees and for the production and sale of minnows at wholesale and retail. He put a value of $3,000 an acre upon 17 acres of ponds that had been actually completed before the taking. He put a value of $2,000 an acre upon the rest of the lowland, as a potential site for ponds, and a similar value of $2,000 upon five acres of higher ground that were to be used as the headquarters for the minnow-raising operation.

In the condemnation proceeding the Commission took the five-acre site of the proposed headquarters. Hammond testified that as a result the value of the ponds was reduced from $3,000 to $500 an acre and the value of the pond sites from $2,000 to $200 an acre. Those reductions, plus the asserted worth of the 12.02 acres actually taken, made up Hammond's claim of $80,150. By contrast, the Commission's two expert witnesses, neither of whom was especially qualified in the field of minnow raising, respectively fixed the landowners' loss at $5,750 and $6,850.

We find in the record no substantial basis for Ham-

mond's estimates of value, nor for those of his witness Tatum. We need discuss only Hammond's testimony, for Tatum's estimates of value are subject to the same criticisms. Shortly before the taking Hammond had leased some of the property for the production of minnows, but he himself had had no practical experience in that activity. Glaring gaps in his testimony include his failure to explain just why five acres are needed as a headquarters for the proposed operation; why the headquarters, if really needed, could not be built on some other part of the tract; and why the taking of the proposed headquarters site would reduce the value of the ponds and pond sites in the amounts to which he testified.

Hammond gave no reasonable basis for valuing the ponds at $3,000 an acre before the taking and the pond sites at $2,000 an acre, nor for reducing those values to $500 and $200 after the taking. He said that he had read about some sales of minnow farms in the 1950's and 1960's, "ranging from $800 an acre," but he had no firsthand knowledge of any of the details, including the vital matter of comparability. His figures, as we observed in a similar situation in *Ark. State Highway Comm'n* v. *Stanley,* 234 Ark. 428, 353 S. W. 2d 173, 4 A. L. R. 3d 749 (1962), had no relation whatever to any fact in the record and were apparently plucked from the air.

On motion the trial judge instructed the jury to disregard all of Hammond's testimony, except that as the owner of the property "he will be permitted to state in his opinion the value of this property prior to the taking and after the taking." A similar instruction was given with respect to Tatum's testimony. That view involves a misconception of our holding in *Ark. State Highway Comm'n* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201 (1966), which the court mentioned as a basis for his ruling. Under that decision, and the cases that have followed it, a witness's estimates of value should be strick-

cn entirely when he is unable to give a fair and reasonable basis for his conclusions. That course should have been followed in the court below, which would have left no testimony to support the verdict.

Reversed.